**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

_____

**AUDREY LUEVENIA DANIELS,**
               **Plaintiff,**

v.                                                                         **Case No. 12-cv-0650**

**MILWAUKEE BOARD OF SCHOOL**
**DIRECTORS and**
**GREGORY THORNTON,**
               **Defendants.**
_____

## DECISION AND ORDER

      Pro se plaintiff Audrey Daniels, a former teacher, alleges that defendants Milwaukee Board of School Directors ("MBSD") and school superintendent Gregory Thornton discriminated against her in various ways. Before me now is defendants' motion for summary judgment.

### I. Background

      Plaintiff was hired as a teacher in Milwaukee in 2000. For the 2005–2006 school year, she was assigned as a diagnostic teacher. In that role, her job was to assess and diagnose children suspected to have disabilities which adversely affect their school performance. She reported directly to the special services supervisors and to the school principal. Beginning in the 2006–2007 school year, plaintiff received unsatisfactory performance evaluations. Most of those negative evaluations were written by school principal Ramelann Kalagian. Plaintiff was placed in a professional growth program in 2009–2010 because of these unsatisfactory reviews, which continued in the 2010–2011 school year. In 2010, plaintiff requested a school transfer but was denied. She also submitted several complaints to school administration about computer problems. Plaintiff

alleges that Kalagian and other school administrators were sabotaging her computer. Defendants claim that these computer problems were promptly addressed by tech support staff.

School administration began two separate disciplinary actions against plaintiff in the year leading up to her termination. The first action began in October 2010, when she was charged with misconduct, specifically insubordination, falsification of documents, and failure/refusal to comply with district policies and procedures. Several hearings were held regarding these charges. The charges were substantiated and in May 2011, the hearing officer recommended termination. Superintendent Thornton agreed with that recommendation. Plaintiff was entitled to appeal her termination to the school board but did not, and she was discharged on June 15, 2011.

The second disciplinary action began in April 2011 when plaintiff was charged with insubordination, unsatisfactory attendance and harassment of others. This time, school administration chose to institute an emergency disciplinary action, and plaintiff was relieved of her duties and directed not to enter school property pending further hearings. A hearing on these charges was held five days later, and the hearing officer found probable cause of "serious misconduct." Gorton Aff. Ex. 4, ECF No. 46-4. Plaintiff was suspended without pay the day after the hearing. Subsequent hearings on this matter were held in order to substantiate the charges, and neither plaintiff nor her union representative appeared despite receiving notice. Some but not all of these misconduct charges were substantiated, and the hearing officer recommended a letter of reprimand. Plaintiff did not appeal this decision either.

II. Discussion

Summary judgment is required if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. F. Rul. Civ. P. 56(a). When considering a summary judgment motion, I view evidence in the light most favorable to the non-moving party and may grant the motion only if no reasonable jury could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Plaintiff's submissions are very unclear, but I construe them liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Plaintiff's amended complaint appears to include the following claims: Title VII race discrimination, Title VII harassment, Title VII retaliation, retaliation under the Family Medical Leave Act ("FMLA"), a claim under 42 U.S.C. § 1983 alleging a procedural due process violation, a claim under 42 U.S.C. § 1982, and a Wisconsin state law claim for unfair labor practices.[1]

**A. Title VII**

**1. Race Discrimination**

In her amended complaint, plaintiff seems to allege that Kalagian discriminated against in various actions—including negative performance reviews, harsh treatment, disciplinary actions, and her termination—because she is black. Title VII makes it illegal for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color,

---

[1] In her summary judgment brief (ECF No. 49), plaintiff also seems to allege an equal protection claim, a violation of the Fair Labor Standards Act, and a breach of contract claim. However, she does not inclue these claims in her amended complaint, therefore I do not address them. *Auston v. Schubnell*, 116 F.3d 251, 255 (7th Cir. 1997) ("[T]he summary judgment stage . . . is too late in the day to be adding new claims.").

3

religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Plaintiff can prove her case using either direct or indirect evidence. *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1104 (7th Cir. 2012). To survive summary judgment under the direct method of proof, she must show enough evidence that a rational jury could find that "but for" her race, her employer would not have taken adverse disciplinary action against her. *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1089 (7th Cir. 2000). This is often difficult to do. Direct evidence can include written or oral remarks, but those remarks must be related to the employment decision in question. *Id*. As evidence of disparate treatment, plaintiff alleges that her supervisor made comments like "Everybody did what they were supposed to do except one person." Am. Compl. at 4, ECF No. 13. She also contends that her supervisor made her do her other team members' work. Her other team members were white, with one Asian woman. Assuming these facts to be true, they are not enough to constitute direct evidence of race discrimination. Plaintiff does not connect these events with any racial animus from her supervisors. In fact, her supervisor's comments do not mention race.

Plaintiff can also show race discrimination using indirect evidence. Under the indirect method of proof, Plaintiff must establish a prima facie case of discrimination by showing that: (1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she suffered an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably. *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). Defendants argue that plaintiff has failed to do this because she has failed to establish that her job performance was satisfactory. Daniels

4

makes no explicit argument that her job performance was satisfactory, but she does allege that Kalagian falsified her negative teacher evaluations. Even assuming this to be true, this is not enough to prove satisfactory job performance. Plaintiff already had a negative job review before she began working for Kalagian,[2] and plaintiff's other supervisors agreed that her job performance was unsatisfactory. Thus, I conclude that no reasonable jury could find that plaintiff's job performance was satisfactory.

Defendants also argue that plaintiff has failed to make a prima facie case because she does not show a similarly situated non-black coworker who was treated more favorably. Similarly situated means "directly comparable to the plaintiff in all materials respects." *Naik v. Boehringer Ingelheim Pharm. Inc.,* 627 F.3d 596, 600 (7th Cir. 2010) (internal quotations and citation omitted). In determining whether two coworkers are similarly situated, I consider whether the coworkers had the same supervisor and were subject to the same standards, *Salas v. Wis. Dep't of Corrections*, 493 F.3d 913, 923 (7th Cir. 2007), and whether the coworkers engaged in substantially similar conduct. *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008). Plaintiff alleges that her other team members were all "White except for on Asian woman." Am. Compl. at 4, ECF No. 13. However, plaintiff fails to establish that these team members engaged in the same conduct for which she was disciplined and even that they held the same position as her and were subject to the same standards. Thus, I conclude that plaintiff has failed to show a similarly situated individual who was treated more favorably than she was.

---

[2] It is worth noting that this previous unsatisfactory performance review was written by principal Floyd Williams, who is black.

Even if plaintiff had made a prima facie case for discrimination, the inquiry would not stop there. Once a plaintiff establishes a prima facie case of discrimination, the burden shifts to defendants to give a non-discriminatory reason for their disciplinary actions against Daniels. *Johnson*, 91 F.3d at 931. The burden then shifts back to plaintiff to show this reason is pretextual. *Id.* That means plaintiff must show some evidence that defendants' stated reasons for the various disciplinary actions were pretextual. To show pretext, plaintiff must show that her employer lied; in other words, "that the employer did not honestly believe in the reasons it gave for firing [her]." *Wolf v. Buss (Am.) Inc.*, 77 F.3d 914, 919–20 (7th Cir. 1996). Defendants assert that plaintiff was given negative reviews, disciplined and ultimately fired because of her negative job performance and substantiated charges of misconduct. Plaintiff offers no evidence to support the inference that these stated reasons were lies. And an argument consisting merely of a plaintiff's conclusory statements and no evidence to support them must lose. *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2002). Thus, I find that plaintiff has also failed to show pretext.

**2. Harassment**

Title VII also prohibits an employer from harassing an employee based on her "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(2); *see also Patterson v. McLean Credit Union*, 491 U.S. 164, 180 (1989) ("[H]arassment in the course of employment is actionable under Title VII's prohibition against discrimination in the 'terms, conditions, or privileges of employment.'"). In evaluating a Title VII harassment claim, I consider the totality of the circumstances and I evaluate the claim against both an objective and subjective standard; that is, I consider the likely effect of defendants' conduct on a
6

*reasonable* person as well as the actual effect of defendants' conduct on the *particular* plaintiff. *Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 674 (7th Cir. 1993). In order to rise to the level of harassment, plaintiff must show that the harassment was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working condition." *Johnson*, 91 F.3d at 938. There is no "magic number" of incidents that gives rise to liability; rather, it depends on the totality of the circumstances. *Rodgers*, 12 F.3d at 674. Even if plaintiff can show this level of hostility in the workplace, she must also show that it is based on her race, gender, ethnicity, or religion. *Vore v. Ind. Bell Tel. Co., Inc.*, 32 F.3d 1161, 1162 (7th Cir. 1994) ("[P]ersonality conflicts between employees are not the business of the federal courts.").

Plaintiff appears to allege that she was harassed because of she is black. As support, plaintiff relates several stories of incidents where her supervisors and other teachers made harassing comments to her. For example, Kalagian allegedly began eavesdropping on plaintiff's meetings and telling other teachers that plaintiff "F–k[s] up things." *Id.* at 3. On one occasion, a different supervisor allegedly said in front of a group of teachers and parents, "Everybody did what they were supposed to do except one person," naming everyone except her. On another occasion, her supervisor allegedly yelled at her in front of a student "I want you to get back over to Thurston Woods right now!" *Id.* at 4. On a third occasion, a different supervisor allegedly yelled at her "If you don't leave right now, I will have security come and remove you!" *Id.* Plaintiff also relates stories of other school employees allegedly saying negative things about her, not unlocking the front door for her, tampering with her computer, and banging on the bathroom door every time

7

she was in it. *Id.* at 3. Plaintiff argues that all of this caused her to feel threatened and mentally abused and that she did not feel mentally or physically safe at work. Assuming all of this to be true, as I must, a reasonable jury could find this to be objectively hostile and that plaintiff was negatively affected. However, plaintiff has failed to establish that these incidents were motivated by racial animus. Other than the fact that her other teammates were not black, plaintiff presents no evidence that the alleged harassment was race-related. None of these harassing statements contain a racial epithet or slur, and plaintiff puts forth no other evidence to suggest racial animus by Kalagian or any of her other supervisors. Thus, I conclude no reasonable jury could find that defendants racially harassed plaintiff.

**3. Retaliation**

Plaintiff also seems to allege that defendants discriminated against her in various ways—including negative job reviews, harsh treatment, disciplinary actions, and her termination—as retaliation for her internal complaints against Kalagian.[3] Title VII makes it unlawful for an employer to retaliate against an employee who has complained about discrimination. § 2000e-3(a). Like a discrimination claim, a Title VII retaliation claim can be shown through either direct or indirect evidence. Under the direct method of proof, plaintiff must show: (1) that she engaged in a statutorily protected activity; (2) that she was subjected to an adverse employment action; and (3) a causal connection between the two.

---

[3] Defendants argue this claim should be disregarded because plaintiff did not address it in her EEOC complaint. Given the liberal rules of construction for *pro se* submissions, including EEOC complaints, I will address the merits of plaintiff's retaliation claims. *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.3d 164, 167 (7th Cir. 1976).

*Silverman v. Bd. of Educ.*, 637 F.3d 729, 740 (7th Cir. 2011).

Defendants agree that plaintiff was subjected to an adverse employment action, namely that she received negative performance reviews and was eventually fired. However, they argue that plaintiff never filed any form of internal complaint about race discrimination or harassment. Plaintiff argues that she complained about the workplace environment and that the negative disciplinary actions taken were retaliation for that complaint. A reasonable juror could believe plaintiff, especially considering she requested to transfer to a different school. Therefore I find that there is a genuine issue of material fact as to whether plaintiff engaged in a statutorily protected activity. However, plaintiff must also show a causal link between her complaint and the negative performance reviews, disciplinary actions, and her termination. *Id.* She has failed to do so. Plaintiff offers no evidence that she was treated harshly, disciplined or fired because she complained about racial animus in the workplace. Thus, she fails to make a prima facie case of retaliation under the direct method of proof.

Plaintiff can also show retaliation using indirect evidence. Under the indirect method of proof, the test for a prima facie case of retaliation is similar to the test for discrimination. Plaintiff must show that: (1) she engaged in a statutorily protected activity; (2) her job performance was satisfactory; (3) she was subjected to an adverse employment action; and (4) others similarly situated who did not engage in the statutorily protected activity were treated more favorably. *Id.* at 742. Plaintiff fails here for the same reasons she failed in her discrimination claim: she fails to show that her job performance was satisfactory and that other similarly situated individuals who did not complain about racial animus in the

9

workplace were treated more favorably. The racial discrimination that she allegedly complained about occurred under the supervision of Kalagian starting in the 2008–2009 school year; but plaintiff received a negative review from a different principal before that, supporting the assertion that her work performance was unsatisfactory. Additionally, she fails to name any coworker who did not complain about racial animus in the work place and was treated more favorably. Thus, plaintiff fails to show retaliation under the indirect method of proof.

Even if plaintiff had made a prima facie case, she would still need to show that defendants' reasons for their actions were pretextual; in other words, that they lied about why they disciplined and fired her. *Id*. Plaintiff has offered no evidence to support this assertion. Therefore, because she has failed to establish a prima facie case of discrimination and pretext, I will dismiss her Title VII retaliation claim.

**B. FMLA**

The Family Medical Leave Act ("FMLA") makes it unlawful for an employer to discriminate or retaliate against an employee who exercises her rights under it. *See* 28 U.S.C. § 2615; *see also Makowski v. Smith Amundsen LLC*, 662 F.3d 818, 824 (7th Cir. 2011) (discussing a retaliation claim under the FMLA). I construe plaintiff's complaint as making two separate arguments. First, plaintiff states that shortly after she filed for medical leave under the FMLA in May 2009, Kalagian falsified her performance review to make it more negative. She alleges that Kalagian gave her the negative review because she requested medical leave. Second, plaintiff argues that the subsequent negative actions—including negative job reviews, harsh treatment, disciplinary actions, and her

termination—were retaliation for that complaint. I construe these as two separate retaliation arguments: one based solely on the negative review in retaliation for her medical leave request and one based on subsequent actions in retaliation for her complaint. 29 U.S.C. § 2617(c) creates a two-year statute of limitations for FMLA violations and a three-year statute of limitations for "willful" violations. Plaintiff filed her complaint in this case on June 25, 2012. Because the alleged violation—the allegedly falsified performance review—occurred more three years before the filing date, I conclude that any FMLA claims based on the negative review are time-barred. However, subsequent disciplinary actions and harsh treatment are alleged to have continued through the time of her discharge in 2011; therefore those claims are not time-barred.

To analyze a retaliation claim under the FMLA, the same standards apply as under Title VII; in other words, plaintiff can use either direct or indirect evidence to establish retaliation. *Cracco v. Vitran Exp. Inc.*, 559 F.3d 625, 633–35 (7th Cir. 2009); *Makowski*, 662 F.3d at 824. For the same reasons that plaintiff fails to show retaliation under Title VII, I find that she also fails to show retaliation under the FMLA. First, plaintiff provides no evidence establishing a causal link between defendants' actions and her complaint about Kalagian. To demonstrate a causal connection, plaintiff must show that her employer would not have taken negative disciplinary action against her "but for" the protected activity. *Johnson*, 91 F.3d at 938–39. As with discrimination claims, suspicious timing of the disciplinary action in relation to the protected activity is not enough. *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). In addition to suspicious timing, plaintiff must also show "other evidence that supports the inference of a causal

link." *Lang v. Ill. Dep't of Children & Family Servs.*, 361 F.3d 416, 419 (7th Cir. 2004). In this case, the only evidence supporting a causal link is the timing of the negative discipline. Plaintiff claims she complained about Kalagian falsifying the performance review in 2009, and presumably afterwards the negative reviews, harsh treatment and discipline that ultimately resulted in her discharge began. However, this timing alone is not enough to establish a causal link. Additionally, this argument is contradicted by the fact that plaintiff began receiving unsatisfactory performance reviews during the 2006–2007 school year, before she complained about Kalagian.

As with her Title VII retaliation claim, plaintiff also fails to show retaliation using the indirect method of proof because no reasonable jury could find that her job performance was satisfactory and because she fails to show any similarly situated individual who did not complain about an FMLA violation and was treated more favorably. Plaintiff also fails to show pretext in this context as well.

**C. § 1983 Due Process Claim**

Plaintiff alleges that defendants, acting under the color of state law, violated her due process rights in the procedures they took in firing her. 42 U.S.C. § 1983 provides that any person who deprives a citizen "of any rights, privileges, or immunities" while acting under color of state law "shall be liable to that citizen." Municipal governments and their subdivisions are subject to § 1983 suits because they are deemed a "person" under the statute. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). However, local governments are not responsible for the actions of their employees. *Baxter by Baxter v. Vigo Cnty. Sch. Corp.*, 26 F.3d 728, 734 (7th Cir. 1994) ("The Supreme Court has

consistently interpreted [§ 1983] as barring *respondeat superior* liability on the part of a local government unit."). Rather, in order for a municipal body to be liable under § 1983, plaintiff must demonstrate that it was the execution of a municipal policy, custom or practice that inflicted the injury. *Monell*, 436 U.S. at 694. Plaintiff must show a direct causal link between a municipal policy, custom or practice and her constitutional deprivation. *McNabola v. Chi. Transit Auth.*, 10 F.3d 501, 509–10 (7th Cir. 1993). She fails to do so. She does not name a custom, policy, or practice of the MBSD or Milwaukee Public Schools which led to her due process deprivation. In fact, she seems to argue in her summary judgment brief that defendants did *not* follow their written termination policy in her case. Therefore her § 1983 claim against the MBSD, a municipal body, fails. Her claim against superintendent Thornton fails for similar reasons. A municipal official like Thornton can be sued in either his official capacity or in an individual capacity. Daniels failed to designate in which capacity she was suing Thornton in her amended complaint. Thus, in the absence of an express statement, I construe the suit as being against Thornton in his official capacity only. *See Yeksigian v. Nappi*, 900 F.2d 101, 104 (7th Cir. 1990). When an official in sued in his official capacity, the suit is akin to a suit against the municipality itself. *Id.* at 103. Thus, the *Monell* custom, policy, or practice rule applies to Thornton as well.

Even if plaintiff had established a municipal custom, policy, or practice that resulted in her discharge, she would still need to show some evidence that the procedures defendants followed when discharging her violated her procedural due process rights. As evidence, plaintiff attempts to show that defendants did not follow the procedures outlined in the school system's collective bargaining agreement. However, breach of contract is not

13

the standard for whether a due process violation has occurred. To establish a due process claim, plaintiff must show that: (1) she had a constitutionally protected property interest; (2) she suffered a loss of that interest amounting to a deprivation; and (3) the deprivation occurred without due process. *Moss v. Martin*, 473 F.3d 694, 700 (7th Cir. 2007). Defendants concede that as tenured teacher, plaintiff could only be terminated for cause and thus had a property interest in continued employment. *See* Wis. Stat. § 119.42(1m). Plaintiff's termination amounts to a deprivation of that interest. I must then consider whether plaintiff received constitutionally adequate procedures in relation to her termination. Adequate procedures in the employment context require: (1) oral or written notice of the charges; (2) an explanation of the employer's evidence; and (3) an opportunity to tell her side of the story. *Staples v. City of Milwaukee*, 142 F.3d 383, 385 (7th Cir. 1998). Pre-termination hearings do not require a "full, trial-type evidentiary hearing." *Id.* at 387. Despite the fact that plaintiff claims she was given no warning, the evidence shows that plaintiff received notice of the pre-termination meetings associated with her October 2010 charges (the charges which ultimately resulted in her termination). What's more, plaintiff attended at least three meetings in conjunction with these charges before the termination decision was made. Although she refers to these meetings as a "kangaroo court," her supervisors did present their evidence and plaintiff was given an opportunity to tell her side of the story at these meetings. The evidence also shows that plaintiff and her union representative had notice of several pre-termination meetings associated with the April 2011 charges at which her supervisors presented evidence supporting the charges. Neither plaintiff nor her representative appeared at any of these hearings despite the opportunity.

What's more, plaintiff was also given the opportunity to appeal the superintendent's termination decision to the MBSD, which would have triggered Board review of the termination decision, but did not do so. Thus, I conclude that the evidence shows that plaintiff had notice of the misconduct charges, an explanation of defendants' evidence, and an opportunity to be heard both before and after the termination decision was made. This is all that due process requires in the employment context.

**D. § 1982 Claim**

Plaintiff also seems to argue that defendants sabotaged her department-issued computer in violation of 42 U.S.C. § 1982. Section 1982 provides that "all citizens . . . have the same right . . . to inherit, purchase, lease, sell, hold, and convey real and personal property." The statute was created to prohibit racial discrimination in the sale and rental of property. *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996). To establish a claim under § 1982, plaintiff must show that: (1) she is a member of a racial minority; (2) the defendants had an intent to discriminate based on her race; and (3) the discrimination is one or more of the activities listed in the statute. *Id.* Plaintiff alleges that her supervisors sabotaged her computer using "computer bug programs." Am. Compl. at 4, ECF No. 13. However, § 1982 only protects the right "to inherit, purchase, lease, sell, hold, and convey" property. None of these applies to plaintiff's situation. She was not trying to purchase, sell, or lease the computer; in fact, the computer wasn't even hers, it belonged to her employer.

**E. Unfair Labor Practice Claim**

Plaintiff also seems to allege that her employers violated Wisconsin's unfair labor practices statute, Wis. Stat. § 111.06. Section 111.06 however deals with labor

organization and collective bargaining and prohibits employers from interfering with such efforts. *See also* Wis. Stat. § 111.04. Plaintiff does not set forth any facts to support the inference that defendants attempted to interfere with her effort to organize or interact with her union, therefore this claim is also inapplicable.

### III. Conclusion

Plaintiff claims that she was unfairly treated and ultimately fired because she is black or alternatively because she complained about her principal. However she fails to show any evidence that her treatment or her discharge were in any way connected with racial animus or retaliatory feelings on the part of her supervisors. She also claims that defendants did not provide her with due process when terminating her, but the evidence shows that she was given adequate, perhaps more than adequate, procedural safeguards before her termination and that she failed to take advantage of post-termination options.

**THEREFORE, IT IS ORDERED** that defendants' summary judgment motion (ECF No. 44) is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 26th day of August, 2014.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge
